1  DEBORAH F. SIRIAS, SB# 102893
     E-Mail: sirias@lbbslaw.com
2  THOMAS S. KIDDE, SB# 61717
     E-Mail: kidde@lbbslaw.com
3  ROBERT M. COLLINS, SB #254915
     E-Mail: rcollins@lbbslaw.com
4  **LEWIS BRISBOIS BISGAARD & SMITH** LLP
   221 North Figueroa Street, Suite 1200
5  Los Angeles, California 90012
   Telephone: 213.250.1800
6  Facsimile: 213.250.7900
   Attorneys for Defendant
7  MS BUBBLES, INC.

8  **KATTEN MUCHIN ROSENMAN LLP**
   Zia F. Modabber (State Bar No. 137388)
9  zia.modabber@kattenlaw.com
   Kristin L. Holland (State Bar No. 187314)
10 kristin.holland@kattenlaw.com
   Cory A. Baskin (State Bar No. 240517)
11 cory.baskin@kattenlaw.com
   2029 Century Park East, Suite 2600
12 Los Angeles, CA 90067-3012
   Telephone:  310.788.4400
13 Facsimile:  310.788.4471
   Attorneys for Defendant
14 AEROPOSTALE, INC.

15              UNITED STATES DISTRICT COURT

16            CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 17  L.A. PRINTEX INDUSTRIES, INC., a California corporation, | CASE NO. CV08-07085 DDP (Ex) |
| 18 | The Honorable Dean D. Pregerson |
| 19                    Plaintiff, | |
| | NOTICE OF MOTION AND MOTION |
| 20          v. | FOR SUMMARY JUDGMENT OF |
| | DEFENDANTS MS. BUBBLES, INC. |
| 21  AEROPOSTALE, a Delaware corporation; CHARLOTTE RUSSE, a | AND AEROPOSTALE, INC. |
| 22  California corporation; KOHLS, a Wisconsin corporation; MS. | |
| | DATE:     May 3, 2010 |
| 23  BUBBLES, a California corporation; RAD CLOTHING, a California | TIME:     10:00 a.m. |
| 24  corporation; and DOES 1 through 10, | PLACE:  Courtroom 3 |
| 25                    Defendants. | |
| | Discovery Cut-off:  March 31, 2010 |
| 26 | Pre-Trial Conf.:     June 7, 2010 |
| 27 | Trial Date:          June 15, 2010 |
| | Action Filed:        October 27, 2008 |
| 28 | |

4821-1708-5701.1821-1708-5701.1821-1708-5701..1

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1    TO ALL PARTIES IN THE ABOVE-ENTITLED ACTION AND TO ALL

2  OTHER COUNSEL OF RECORD:

3    PLEASE TAKE NOTICE that on May 3, 2010, at 1:30 p.m. or as soon

4  thereafter as counsel may be heard, in the Courtroom of the Honorable Dean D.

5  Pregerson, located at 312 North Spring Street, Los Angeles, CA 90012, Courtroom

6  3, Defendants Ms. Bubbles, Inc. ( "Ms. Bubbles") and Aeropostale, Inc.

7  ("Aeropostale"; Ms. Bubbles and Aeropostale, collectively, "Defendants") will

8  move this court for summary judgment on all claims brought against them by

9  Plaintiff L.A. Printex Industries, Inc. (hereinafter "L.A. Printex").

10    This motion will be based upon this notice of motion, the accompanying

11  memorandum of points and authorities, the declarations of Deborah F. Sirias; Robert

12  M. Collins; Colette Stanford; and Sanjiv Chopra, the evidence attached thereto, and

13  any further memoranda that may be submitted prior to the hearing herein and all

14  pleadings and files in this matter.

15    Filed concurrently with this notice of motion and motion are the following

16  documents:

17        1.    Declaration of Deborah F. Sirias;

18        2.    Declaration of Robert M. Collins;

19        3.    Declaration of Colette Stanford;

20        4.    Declaration of Sanjiv Chopra;

21        5.    Statement of uncontroverted facts and conclusions of law; and

22        6.    Proposed Order.

23    Counsel for the parties met and conferred pursuant to Local Rule 7-3 more

24  than 20 days prior to the filing of this motion and were unsuccessful in resolving the

25  issues set forth herein.

26    Defendants hereby move for summary judgment on the following causes of

27  action and issues:

28        1.    The First Cause of Action against Defendants for Copyright

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Infringement under 17 U.S.C. Section 101 *et seq.*, is not viable because Plaintiff

2  L.A. Printex does not own a copyright in the "Snowflake Artwork" at issue.

3      2.    The Second Cause of Action against Defendants for Vicarious and/or

4  Contributory Copyright Infringement under 17 U.S. C. Section 101 *et seq.*, is not

5  viable because Plaintiff L.A. Printex does not own a copyright in the "Snowflake

6  Artwork" at issue.

7      3.    L.A. Printex's copyright registration VA 1-344-918 is invalid due to

8  fraud on the copyright office.

9      4.    L.A. Printex has no valid copyright in the "Snowflake Artwork"

10  because the "Snowflake Artwork" was registered as part of a collection, but

11  published separately from that collection.

12      5.    L.A. Printex is not entitled to recover lost profits under Section 504(b)

13  attributable to Aeropostale's retail sales of garments bearing the allegedly infringing

14  "Snowflake Artwork" because L.A. Printex cannot establish the requisite causal

15  nexus between the alleged infringement and Aeropostale's profits.

16

17  DATED: April 2, 2010          DEBORAH F. SIRIAS
18                              THOMAS S. KIDDE
                            ROBERT M. COLLINS
19                              LEWIS BRISBOIS BISGAARD & SMITH LLP

20                           By:  _s/ Deborah F. Sirias_
21                               Deborah F. Sirias
                             Attorneys for Defendant MS. BUBBLES,
22                               INC.

23  DATED: April 2, 2010          **KATTEN MUCHIN ROSENMAN LLP**

24

25                           By:  _s/ Cory A. Baskin_
26                               Kristin Holland
                             Cory A. Baskin
27                               Attorneys for Defendant AEROPOSTALE,
                             INC.

28

**LEWIS
BRISBOIS
BISGAARD
& SMITH LLP**
ATTORNEYS AT LAW

4821-1708-5701.1

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff L.A. Printex alleges that defendants Ms. Bubbles and Aeropostale infringed a copyrighted textile design that L.A. Printex purports to own, and that such infringement was willful.  Nothing could be further from the truth.  As explained further below, this case is a sham and summary judgment should be granted ending this lawsuit.  L.A. Printex's copyright is invalid because the main image in the design it purportedly copyrighted was already the exclusive intellectual property of another company, Adobe Systems Incorporated ("Adobe").  L.A. Printex also committed fraud on the Copyright Office by intentionally failing to disclose in its registration materials that its design was a derivative work based upon the Adobe design.  L.A. Printex exacerbated this fraud by registering the design as part of a collection in order to obtain copyrights for designs, like the subject design, that would not individually pass muster with the Copyright Office.

## II.   SUMMARY OF ARGUMENT AND PERTINENT FACTS

Plaintiff L.A. Printex is in two businesses.  It is a Los Angeles-based printing mill and it is in the business of filing lawsuits.  (*See* Separate Statement of Uncontroverted Facts and Conclusions of Law (hereinafter "SS"), #1, 5).  L.A. Printex markets textile designs allegedly created by its in-house design team for use on fabrics to the apparel industry.  (SS, #2).  L.A. Printex purports to have created "original" textile designs using basic computer programs.  (SS, #3).  L.A. Printex then groups these designs into "collections," often bearing little if any relation to one another, and submits these collections for registration with the Copyright Office.  (SS, #4).  L.A. Printex has filed dozens of lawsuits in the past several years for the alleged infringement of its copyrighted designs.  (SS, #5).

Defendant Ms. Bubbles is a Los Angeles based wholesaler of women's and

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  men's apparel and has been in the fashion industry for over 17 years. (SS, #6).

2  Defendant Aeropostale is a mall-based, specialty retailer of casual apparel and

3  accessories, principally targeting 14 to 17 year-old young women and men through

4  its Aeropostale® stores. (SS, #7).   Aeropostale provides customers with a focused

5  selection of high-quality, active-oriented, fashion and fashion basic merchandise.

6  (SS, #8).   Aeropostale sources, markets and sells products bearing its own brands

7  and marks. (SS, #9).   During mid 2006 through early 2007, Aeropostale did not

8  typically design printed shirts such as the garment that is the subject of this lawsuit.

9  (SS, #10).   In those instances where Aeropostale relied on the design of a vendor,

10  such as Ms. Bubbles, the vendor provided Aeropostale with sample garments. (SS,

11  #11).    Aeropostale provided specifications (size, configuration, color, quantities)

12  and place orders with the vendors. (SS, #12).   Vendors, such as Ms. Bubbles,

13  agreed to manufacturing or vendor terms, which included representations and

14  warranties by the vendor and indemnification for any claims that related to the

15  products (including copyright and trademark claims). (SS, #13).

16  At issue in this lawsuit is the alleged copyright infringement by Ms. Bubbles

17  and Aeropostale of a two dimensional textile design allegedly owned by L.A.

18  Printex. L.A. Printex describes this design as "snowflake artwork", and refers to it

19  as "Internal Design Number G70132" (hereinafter "Snowflake Artwork"). (SS,

20  #14).   The Snowflake Artwork was registered by L.A. Printex with the United States

21  Copyright Office on December 9, 2005, along with twelve other designs, as part of a

22  collective work identified by L.A. Printex as "Geometric (Group 04)."   Geometric

23  (Group 04) was collectively assigned U.S. Copyright No. VA 1-344-918. (SS, #14).

24  While L.A. Printex asserts ownership of a copyright in the Snowflake Artwork,

25  L.A. Printex designer Cindy Song admitted at deposition that in 2005 she used the

26  below Adobe Photoshop 7.0 (hereinafter "Adobe 7.0") image entitled "Floral

27  Ornament 4" to create the Snowflake Artwork. (SS, #15).

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4821-1708-5701.1

5

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1

2

3

4

5



6      Below are the Snowflake Artwork images Ms. Song made using Floral

7   Ornament 4 that were included with the deposit material for the registration at issue

8   in this lawsuit, VA 1-344-918. (SS, #16).

9

10

11

12

13      

14

15

16

17      Per the terms of the non-exclusive End User License Agreement included with

18   Adobe 7.0, the software "Clip Art" images, like the Floral Ornament 4 image used

19   to make the above pictured Snowflake Artwork, are the intellectual property of

20   Adobe Systems Incorporated and end users like L.A. Printex are prohibited from

21   asserting or seeking intellectual property rights in those images.  (SS, #17).

22      In addition, the End User License Agreement prohibits end users from asserting

23   intellectual property rights in works created that are derivative of the "Clip Art"

24   images.  (SS, #18).  As such, because the Snowflake Artwork is based on an image

25   L.A. Printex admittedly took from Adobe Photoshop, it cannot own a copyright in

26   the image.  Accordingly, L.A. Printex owns no copyright in the Snowflake Artwork

27   as a matter of law and Defendants are entitled to summary judgment.

28      Not only is L.A. Printex's registration of the Snowflake Artwork a violation of

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    the Adobe 7.0 End User Agreement, but it also evinces an intent to defraud the

2    United States Copyright Office. As shown above, the deposit material for the

3    Snowflake Artwork includes a direct copy of the Adobe 7.0 Floral Ornament 4

4    depicted in adjacent rows. (SS, #19). This evidences L.A. Printex's intent to

5    register Floral Ornament 4 by itself as its original work. Furthermore, the

6    registration fails to state that the Snowflake Artwork is a derivative of Floral

7    Ornament 4. (SS, #20). It is clear that in registering the Snowflake Artwork, L.A.

8    Printex intentionally omitted the fact that the design was copied from Adobe 7.0

9    because such an admission would have been grounds for rejection of the

10    registration. Accordingly, Defendants are also entitled to summary judgment on the

11    grounds that L.A. Printex does not have a valid registration of the Snowflake

12    Artwork as a result of fraud on the Copyright Office.

13        L.A. Printex's copyright in the Snowflake Artwork is also invalid because it

14    was registered as a collective work, but published separately from the other works

15    that were part of the same collection. The Copyright Act permits a collection of

16    textile designs to be registered together only if all the designs are "published" as a

17    single collective unit and the copyright claimant is the same for all designs in the

18    collection. *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 203-206 (3rd Cir.

19    2005). Here, L.A. Printex registered the Snowflake Artwork as part of a collection

20    known as Geometric (Group 04). (SS, #14). However, aside from the timing of

21    their creation, there is little, if any, correlation between the Snowflake Artwork and

22    the other twelve designs that comprise Geometric (Group 04). (SS, #21). The

23    evidence produced by L.A. Printex in this case indicates that it sold – *i.e.*, published

24    – the Snowflake Artwork (G70132) separately to its customers. (SS, #22). Since

25    L.A. Printex admittedly, repeatedly and exclusively sold the Snowflake Artwork

26    separately from the rest of the designs comprising Geometric (Group 04), L.A.

27    Printex's collective registration is invalid.

28        L.A. Printex's copyright infringement claims fail as a matter of law because it

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4821-1708-5701.1                                    7
NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1  cannot establish a viable copyright in the Snowflake Artwork.  Accordingly,

2  Defendants are entitled to summary judgment.

3    Furthermore, even if L.A. Printex's copyright was valid, which it is not,

4  Aeropostale would still be entitled to partial summary judgment on L.A. Printex's

5  claim for lost profits because L.A. Printex cannot establish any causal nexus

6  between the Snowflake Artwork and Aeropostale's sales.  Defendants' expert

7  witness has opined that Aeropostale's "total incremental profits pertain to a variety

8  of business activities that have nothing to do with the alleged infringement of the

9  subject pattern.  Such activities include the (i) operation of retail stores, (ii) brand

10  creation, management, and related marketing/advertising, (iii) design of the apparel,

11  and (iv) financial operations." (SS, #23).  L.A. Printex has no evidence to the

12  contrary.

13

14  **III. SUMMARY JUDGMENT STANDARD**

15    Summary judgment is proper where "the pleadings, depositions, answers to

16  interrogatories, and admissions on file, together with the affidavits, if any, show that

17  there is no genuine issue as to any material fact and that the moving party is entitled

18  to a judgment as a matter of law." Fed. R. Civ. P. Rule 56(c); *Celotex Corp. v.*

19  *Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party has the burden of

20  demonstrating the absence of a genuine issue of fact for trial.  *See Anderson v.*

21  *Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  If the moving party satisfies the

22  burden, the party opposing the motion must set forth specific facts, through

23  affidavits or admissible discovery materials, showing that there remains a genuine

24  issue for trial.  *See id.*; Fed. R. Civ. P. Rule 56(c).  The dispute must be genuine.

25  The "opponent must do more than simply show there is some metaphysical doubt as

26  to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio*

27  *Corp.*, 475 U.S. 574, 586 (1986).  A complete failure of proof concerning an

28  essential element of the non-moving party's case necessarily renders all other facts

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4821-1708-5701.1                                    8
NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

Case 2:08-cv-07085-DDP-E   Document 57   Filed 04/02/10   Page 9 of 21   Page ID #:493

1   immaterial. *Celotex*, 477 U.S. at 323.

2   The following will show that that there is no genuine issue of material fact in

3   this matter as to L.A. Printex's lack of ownership of a valid copyright in the

4   Snowflake Artwork, and that Defendants are entitled to judgment in their favor as a

5   matter of law.

6

7   **IV.  LEGAL ARGUMENT**

8   **A.  L.A. Printex Has No Valid Copyright In Adobe's "Floral Ornament

9   4"**

10   As discussed above, Plaintiff L.A. Printex has admitted that it took "Floral

11   Ornament 4" from Adobe 7.0 and copied it to create the Snowflake Artwork. (SS,

12   #15). Thus, to the extent L.A. Printex claims copyright protection in registration

13   VA 1-344-918, for what it describes as "snowflake artwork" (*See* L.A. Printex's

14   Motion for Summary Judgment, (ECF 48), P. 6), but what is in actuality a direct

15   copy of Adobe 7.0's Floral Ornament 4, its copyright is invalid as it lacks the

16   originality necessary to qualify for copyright protection.

17   To qualify for copyright protection, a Plaintiff must show that "the work was

18   independently created by the author, and that it possesses at least some minimal

19   degree of creativity." *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076 (9th Cir.

20   2000) (quoting *Feist Pub., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345

21   (1991). A pervasive requirement of copyright protection is that the work be

22   original. *Feist Publications, Inc. v. Rural Tel. Servo Co.*, 499 U.S. 340, 345 (1991).

23   A certificate from the U.S. Register of Copyrights only constitutes prima facie

24   evidence of the validity of copyright, a rebuttable presumption. 17 U.S.C. §401(c);

25   *see also Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d. Cir.

26   1985). Indeed, if a work is not original to its author, and is only a "slavish or

27   mechanical cop[y] from others", then no copyright protection is accorded to it.

28   *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 763 (2d Cir. 1991) (citing

4821-1708-5701.1                                9
NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 490 (2d Cir. 1976).

2      The so called "snowflake element" which makes up the central focus of the

3  Snowflake Artwork is nothing more than a direct copy of Adobe's "Floral Element

4  4". (SS, #19). Therefore, to the extent that L.A. Printex is attempting to claim a

5  copyright in this image, its copyright is invalid as it lacks the originality required for

6  copyright protection. *Feist*, 499 U.S. at 345.

7      L.A. Printex will undoubtedly claim that it is entitled to copyright protection

8  for the "arrangement" of the snowflake elements" however, this is also unavailing.

9  As discussed in detail below, L.A. Printex's attempted registration of the Snowflake

10  Artwork is prohibited by the terms of the End User License Agreement it agreed to

11  when it made use of Adobe 7.0, and thus L.A. Printex is contractually precluded

12  from making any claim of originality in the arrangement of Floral Ornament 4 in the

13  Snowflake Design.[1] (SS, #17-18).

14      Without a valid copyright L.A. Printex's claims of copyright infringement

15  against Defendants are not viable and this Court should grant summary judgment in

16  Defendants' favor as a matter of law.

17

18      **B.  L.A. Printex Has No Valid Copyright In Any Work Derivative of**

19          **Adobe System's "Floral Ornament 4"**

20      Just as L.A. Printex may not claim copyrights in its direct copy of Adobe's

21

22  _____

[1] As discussed in detail under Section B, Plaintiff is contractually precluded from

23  claiming any originality in works derivative of Floral Ornament 4. (SS, #15-16).

24  However, even barring the clear prohibitions set forth in the Adobe 7.0 End User
   Agreement, Defendants do not concede that Plaintiff's arrangement of Floral

25  Ornament 4 in the Snowflake Design is sufficiently creative to support a copyright.

26  Indeed, if need be Defendants are prepared to demonstrate at trial that the argyle
   pattern employed by Plaintiff in the Snowflake Design is commonly used in the

27  textile industry and is not sufficiently creative to support a copyright registration.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   Floral Ornament 4, it may also not claim a copyright in any work derivative of

2   Floral Ornament 4 as such is prohibited by the terms of the Adobe 7.0 End User

3   Agreement.  (SS, #18).  Accordingly, L.A. Printex has no valid copyright in the

4   Snowflake Artwork and Ms. Bubbles is entitled to summary judgment as a matter of

5   law.

6        As discussed above, L.A. Printex created the Snowflake Artwork by taking the

7   image Floral Ornament 4 from Adobe 7.0.  (SS, #15).  When it made use of Adobe

8   7.0 to create the Snowflake Artwork, L.A. Printex agreed to abide by the terms of

9   the End User License Agreement (hereinafter "End User Agreement") included with

10  the sofware.  (SS, #24).  Specifically, the End User Agreement provides:

11            "BY USING ALL OR ANY PORTION OF THE

12            SOFTWARE YOU ACCEPT ALL THE TERMS AND

13            CONDITIONS OF THIS AGREEMENT…"

14  (SS, #25) (Emphasis in original).

15  The End User Agreement further provides that:

16            "As long as you comply with the terms of this End User

17            License Agreement…, Adobe grants to you a non-

18            exclusive license to use the Software for the purposes set

19            forth below."

20  (SS, #26).

21        Thus, when it used the Adobe "Software", L.A. Printex agreed to abide by the

22  terms of the Agreement.  The End User Agreement defines the term "Software" in

23  pertinent part as:

24            "'Software' means… (ii) digital images, stock

25            photographs, clip art, sounds or other artistic works

26            ('Stock Files')…"

27  (SS, #27).

28        As for use of the "Stock Files", the End User Agreement indicates that end

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4821-1708-5701.1
11

1 | users may:

2 |     "...display, modify, reproduce, and distribute any of the

3 |     Stock Files included with the Software."

4 | (SS, #28).

5 | The End User Agreement also indicates that:

6 |     "[T]he Software is protected by copyright, including

7 |     without limitation by United States Copyright Law...";

8 |     and that the "Software and any copies that [L.A. Printex]

9 |     [is] authorized by Adobe to make are the intellectual

10 |     property of and are owned by Adobe Systems

11 |     Incorporated and its suppliers", and that "[e]xcept as

12 |     expressly stated herein, this Agreement does not grant

13 |     you any intellectual property rights in the Software and

14 |     all rights not expressly granted are reserved by Adobe."

15 | (SS, #29-30) (Emphasis added).

16 |     The above provisions included with Adobe 7.0 extend a non-exclusive license

17 | to L.A. Printex to "display, modify, reproduce and distribute" Floral Ornament 4,

18 | but they preclude L.A. Printex from asserting intellectual property rights in works

19 | created by using Floral Ornament 4 or any of the other Stock Files included with

20 | Adobe 7.0.  (SS, #26-30).

21 |     The exclusive rights to publish, copy, distribute, or to create derivative works

22 | are conferred upon the owner of a copyright from the time of creation of the original

23 | work.  17 U.S.C. §106; *see also Harper & Row, Publishers, Inc. v. Nation*

24 | *Enterprises*, 471 U.S. 539, 546-47 (1985).  A copyright owner has the right to issue

25 | a non-exclusive license for use of the copyrighted work.  17 U.S.C. §106.  "The

26 | right to claim copyright ownership in a noninfringing derivative work arises by

27 | operation of law, not through authority from the copyright owner of the underlying

28 | work."  *Schrock v. learning Curve Int'l, Inc.*, 586 F.3d 513, 524 (7th Cir. 2009).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   However, "if the pertinent agreement between the parties affirmatively bars the
2   licensee from obtaining copyright protection even in a licensed derivative work, that
3   contractual provision would appear to govern." *Id.* (*citing* Nimmer on Copyright,
4   §3.06, at 3-34.34) (Emphasis added).

5       L.A. Printex admits it took Floral Ornament 4 from Adobe 7.0 and used the
6   image to create the Snowflake Artwork. (SS, #15). As end users like L.A. Printex
7   are granted a non-exclusive license to "display, modify, reproduce, and distribute
8   any of the Stock Files…", including Floral Ornament 4, L.A. Printex's creation and
9   commercial use of Floral Ornament 4 to create the Snowflake Artwork appears to
10  comply with its non-exclusive rights under section 2.5 of the Agreement. (SS, #28).
11  However, the Agreement clearly indicates that Adobe retains the intellectual
12  property rights in any copies that L.A. Printex is authorized to make. (SS, #29).
13  Furthermore, the Agreement specifically states that Adobe does not grant "any
14  intellectual property rights in the Software" to L.A. Printex, and that "all rights not
15  expressly granted are reserved by Adobe." (SS, #30). Accordingly, L.A. Printex
16  may not assert copyright protection, or any other intellectual property rights, in the
17  Snowflake Artwork because it is contractually prohibited from doing so by Adobe.

18      It of course stands to reason that Adobe precludes its non-exclusive licensees
19  (like L.A. Printex) from asserting intellectual property rights in works created using
20  Adobe 7.0. If Adobe did not so limit the use of its software it would run the risk of
21  an enormous number of Adobe end-users seeking copyrights in derivatives of the
22  Adobe Software, thereby seriously curtailing the utility of the Software for Adobe's
23  other customers. To ensure the full and complete use of its software, Adobe
24  prohibits end-users from asserting any intellectual property rights in the software,
25  including copyrights.

26      Therefore, because L.A. Printex is contractually prohibited from asserting a
27  copyright in the Snowflake Artwork as a derivative work it has no valid copyright
28  and Defendants are entitled to summary judgment as a matter of law.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    **C.  L.A. Printex's Registration Of The "Snowflake Artwork" Is Also**
2         **Invalid Due To Fraud On The Copyright Office**

3         Apart from lacking sufficient originality, and violating the Adobe 7.0 End User

4    Agreement, L.A. Printex's Snowflake Artwork registration is also invalid for fraud

5    on the Copyright Office.  When it sought to register the Snowflake Artwork, L.A.

6    Printex intentionally omitted the fact that it copied Floral Ornament 4 to make the

7    Snowflake Artwork.  (SS, #20).  L.A. Printex omitted this important detail because

8    it knew that it was precluded from asserting intellectual property rights in the Clip

9    Art images found on Adobe 7.0 by the terms of the End User Agreement, and that

10   this was grounds for the Copyright Office to reject the registration.  (SS, #25-30).

11   This fraud on the Copyright Office invalidates L.A. Printex's copyright registration

12   in the Snowflake Artwork and entitles Ms. Bubbles to summary judgment as a

13   matter of law.

14        "Copyright protection does not extend to any part of the work in which

15   [preexisting] material has been used unlawfully."  17 U.S.C. §103(a); *see also*

16   *Watkins v. Chesapeake Custom Homes, L.L.C.*, 330 F.Supp.2d 563, 572 (D. Md.

17   2004).  "[T]he knowing failure to advise the Copyright Office of facts which might

18   have occasioned a rejection of the application constitutes reason for holding the

19   registration invalid and thus incapable of supporting an infringement action." *Eckes*

20   *v. Card Prices Update*, 736 F.2d 859, 861-62 (2d Cir. 1984) (*quoting Russ Berrie &*

21   *Co. v. Jerry Elsner Co.*, 482 F.Supp. 980, 988 (S.D.N.Y. 1980).

22        L.A. Printex intentionally omitted the fact that the Snowflake Artwork was

23   based on Floral Ornament 4 because it knew it was precluded from asserting

24   intellectual property rights in the image by virtue of the Adobe 7.0, End User

25   Agreement.  (SS, #25-30).  Even if L.A. Printex now disingenuously asserts that it

26   never sought a copyright in that part of the design that was a direct copy of Floral

27   Ornament 4, such an argument is belied by the deposit material included with the

28   registration for the Snowflake Design.  Specifically, inclusion of the following with

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   its deposit material evinces an intent by L.A. Printex to register Floral Ornament 4

2   as its original design:



9        The failure to properly disclose that the above image is nothing more than a

10  blatant copy of Floral Ornament 4 placed into rows, was not an innocent omission

11  by L.A. Printex.  As the owner of multiple copyrights for fabric designs, and as the

12  Plaintiff in dozens of copyright infringement lawsuits, L.A. Printex is sophisticated

13  and well versed in copyright law.  (SS, #3, 5).  L.A. Printex withheld this decisive

14  fact because it knew the Copyright Office would reject the registration if it were

15  disclosed that registration of the Snowflake Artwork was prohibited by the Adobe

16  7.0, End User Agreement.  (SS, #25-30).  Furthermore, even if L.A. Printex were

17  not prohibited by the End User Agreement, the above image depicts nothing more

18  than rows of Floral Ornament 4, for which Adobe Systems owns the copyright, and

19  there is simply nothing original to L.A. Printex in this image.  (SS, #27, 29-30).

20  There is no question that L.A. Printex's fraud on the Copyright Office entitles

21  Defendants to summary judgment as a matter of law.

22

23      **D.  L.A. Printex's Copyright Is Invalid Because The Snowflake Artwork**

24          **Was Registered As Part Of A Collection But Published Individually**

25        The Copyright Act permits two types of copyright registrations:  (1) a group

26  registration; and (2) a single work registration.  *See Kay Berry, Inc. v. Taylor Gifts,*

27  *Inc.*, 421 F.3d 199, 203-206 (3rd Cir. 2005).  Group registrations only apply to

28  certain enumerated types of works, which are not at issue here.  37 C.F.R. §

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  202.3(b)(4)-(9) ("automated databases," "related serials," "daily newspapers,"

2  contributions to periodicals," "daily newsletters," and "published photographs").

3  Accordingly, the single work registration analysis applies in this case. *See Taylor*

4  *Gifts, Inc.*, 421 F.3d at 204-205. A collective work may be registered as a single

5  copyrighted work if the requirements are met that the work is "published" as a

6  single collective unit and the copyright claimant is the same for all designs in the

7  collection. *See* 37 C.F.R. § 202.3(b)(4)(i); *see also Taylor Gifts, Inc.*, 421 F.3d at

8  205. The Copyright Act defines "publication" as the "distribution of copies . . . of a

9  work to the public by sale or other transfer of ownership, or by rental, lease or

10  lending. . . . <u>A public performance or display of a work does not of itself constitute</u>

11  <u>publication</u>." 17 U.S.C. § 101 (emphasis added). Finally, the owner of a copyright

12  to a collective work "is presumed to have acquired only the privilege of reproducing

13  and distributing the contribution <u>as part of that particular collective work</u>" or a

14  revision or later series. 17 U.S.C. § 201(c) (emphasis added). Where the separate

15  and individual designs are published separately, and are not part of a true

16  "collection", they are statutorily required to be registered separately. *See Morris v.*

17  *Business Concepts, Inc.*, 259 F.3d 65, 69 (2d Cir. 2001).

18      As previously noted, L.A. Printex registered the Snowflake Artwork as part of

19  a collection known as Geometric (Group 04). (SS, #14). However, aside from the

20  timing of their creation, there is little, if any, correlation between the Snowflake

21  Artwork and the other twelve designs that comprise Geometric (Group 04).[2] (SS,

22  #21). L.A. Printex purports that its practice is to "show" its designs together to its

23

24  [2]   The only seemingly logical explanation for L.A. Printex's collective registration
of these unrelated designs is that L.A. Printex has learned through trial and error that

25  a collective registration is scrutinized less closely by the Copyright Office and is
therefore more likely to be approved than a single work registration. In addition,

26  collective registrations allow L.A. Printex to "game" the system, by paying far less

27  in registration fees.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4821-1708-5701.1
16
NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1   clients by making its sample directory available to its customers for viewing at its

2   showroom.  (SS, #31).  However, merely compiling its designs into design books

3   and then allowing its customers to view these books at its facility, free of charge,

4   does <u>not</u> satisfy the Copyright Act's definition of "publication."  Publication

5   requires the distribution of a work by "sale or other transfer of ownership, or by

6   rental lease or lending."  17 U.S.C. § 101.  Simply displaying the work to the public

7   is not sufficient.  *Id.*

8       L.A. Printex has no evidence that the patterns comprising Geometric (Group

9   04) were ever <u>collectively</u> sold to any of its customers as part of a group.  Thus,

10  L.A. Printex has no evidence that Geometric (Group 04) was ever "published" as a

11  single collective unit.  Instead, the only evidence produced by L.A. Printex in this

12  case indicates that it sold – *i.e.*, published – the Snowflake Artwork (G70132)

13  <u>separately</u> to its customers.  (SS, #32).  Since L.A. Printex admittedly, repeatedly

14  and exclusively sold the Snowflake Artwork separately from the rest of the designs

15  comprising Geometric (Group 04), L.A. Printex's registration is invalid as the

16  designs were not published as a true collective work, and were thus statutorily

17  required to be registered separately.  *Morris*, 259 F.3d at 69.

18      Absent a valid copyright, L.A. Printex's claims for copyright infringement

19  fail as a matter of law and Defendants are therefore entitled to summary judgment.

20

21      **E.  Even If L.A. Printex's Copyright Were Valid, Which It Is Not, L.A.**

22          **Printex Is Not Entitled To Recover Lost Profits From Aeropostale**

23          **Because It Cannot Meet Its Burden To Establish A Causal Nexus**

24          **Between The Snowflake Artwork And Aeropostale's Sales**

25      As part of the damages it seeks in this case, L.A. Printex claims that it is

26  entitled to profits realized by Aeropostale through the sale of allegedly infringing

27  garments bearing the Snowflake Artwork.  (SS, #33).  These sales numbers are

28  confidential pursuant to the operative Protective Order in this case, but Aeropostale

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   acknowledges that they are in the six figures.  (SS, #34).  In support of its

2   entitlement to these profits, L.A. Printex argues that "[p]er 17 U.S.C. § 504(b), 'the

3   copyright owner is required to present proof only of the infringer's gross revenue,

4   and the infringer is required to prove his or her deductible expenses.'"  (SS, #35).

5   L.A. Printex is only half-right.

6         The Ninth Circuit interprets Section 504(b) as creating a two-step framework

7   for the recovery of indirect profits:  (1) the copyright claimant must first show a

8   causal nexus between the alleged infringement and the defendant's gross revenue;

9   and (2) once the causal nexus is shown, the alleged infringer bears the burden of

10  apportioning the profits that were not the result of infringement.  *Polar Bear Prods.,*

11  *Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004).  Thus, as a threshold inquiry,

12  in order to survive summary judgment on a demand for indirect[3] profits pursuant to

13  17 U.S.C. section 504(b), a copyright holder "must proffer sufficient non-

14  speculative evidence to support a causal relationship between the infringement and

15  the profits generated indirectly from such an infringement."  *Mackie v. Rieser*, 296

16  F.3d 909, 915-916 (9th Cir. 2002).  To this end, "a copyright owner is required to do

17  more initially than toss up an undifferentiated gross revenue number; the revenue

18  stream must bear a legally significant relationship to the infringement."  *Polar Bear*

19  *Prods., Inc.*, 384 F.3d at 711.

20        In *Mackie*, a Seattle-based artist (Mackie) sued the Seattle Symphony

21  Orchestra and a graphic artist retained by the symphony for copyright infringement

22  alleging that the Symphony's promotional brochure used Mackie's artwork without

23

24  [3] "Direct profits" are those that are generated by selling an infringing product.
    *Mackie*, 296 F.3d at 914.  Indirect profits cases involve a defendant using a

25  copyrighted work to sell another product.  *See e.g.*, *Polar Bear Prods., Inc.*, 384

26  F.3d at 708.  Since Aeropostale is alleged to have sold garments bearing the
    allegedly infringing design, not simply the design itself, this is an indirect profits

27  case.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4821-1708-5701.1

18

1 | authorization. *Mackie*, 296 F.3d at 911-912. As part of his alleged damages,
2 | Mackie sought to recover profits that the Symphony generated for the 1996-97
3 | season in which the allegedly infringing brochure was used, as well as profits for
4 | future seasons. *Id.* at 913. Following discovery, the Symphony moved for partial
5 | summary judgment on Mackie's demand for indirect profits. After setting forth the
6 | governing rule that in order to survive summary judgment, a copyright claimant
7 | must first satisfy his threshold burden to establish a causal nexus between the
8 | alleged infringement and the defendant's gross revenue, the court found that Mackie
9 | had not met his burden and awarded summary judgment to defendants. *Id.* at 915-
10 | 916. In concluding that Mackie had not proffered sufficient non-speculative
11 | evidence to create a triable issue of fact as to causation, the court observed: "we can
12 | surmise virtually endless permutations to account for an individual's decision to
13 | subscribe to the Pops series, reasons that have nothing to do with the [infringed
14 | promotional] artwork in question. For example, was it because of the Symphony's
15 | reputation, or the conductor, or a specific musician, or the dates of the concerts, or
16 | the new symphony hall, or the program, or the featured composers, etc." *Id.* at 916.

17 | As in *Mackie*, L.A. Printex has no evidence to support any causal nexus
18 | between its allegedly copyrighted design and Aeropostale's profits from its sales of
19 | garments bearing a similar design to the general public. Furthermore, L.A. Printex
20 | has not retained any expert witness to opine as to the relationship between the
21 | Snowflake Artwork and Aeropostale's sales. On the other hand, Defendants'
22 | financial expert, David Nolte of Fulcrum Financial Inquiry LLP opines:
23 | "[Aeropostale's] total incremental profits pertain to a variety of business activities
24 | that have nothing to do with the alleged infringement of the subject pattern. Such
25 | activities include the (i) operation of retail stores, (ii) brand creation, management,
26 | and related marketing/advertising, (iii) design of the apparel, and (iv) financial
27 | operations." (SS, #23). Stated another way, Aeropostale's consumers bought the
28 | garments in question because of Aeropostale's brand name, the fit of the garment,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4821-1708-5701.1

19

1  the garment's color, the texture and feel of the garment's fabric, the convenience of

2  the Aeropostale store location, and numerous other factors, each of which have

3  nothing to do with the rudimentary Snowflake Artwork allegedly copyrighted by

4  L.A. Printex.

5      Since L.A. Printex cannot proffer sufficient evidence to create a triable issue as

6  to its entitlement to indirect profits, Aeropostale is entitled to partial summary

7  judgment on this issue.

8  ///

9  ///

10 ///

11 ///

12 ///

13 ///

14 ///

15 ///

16 ///

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4821-1708-5701.1

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

**V.  CONCLUSION**

Based on the foregoing Plaintiff L.A. Printex does not own a copyright in the Snowflake Artwork.  Without a valid copyright L.A. Printex may not sue either Ms. Bubbles or Aeropostale for copyright infringement and these Defendants are thus entitled to summary judgment as a matter of law.  Furthermore, even if L.A. Printex is deemed to have a valid copyright in the Snowflake Artwork, L.A. Printex is still entitled to partial summary judgment on the issue of lost profits.

DATED: April 2, 2010        DEBORAH F. SIRIAS
                            THOMAS S. KIDDE
                            ROBERT M. COLLINS
                            LEWIS BRISBOIS BISGAARD & SMITH LLP


                            By:  s/ Deborah F. Sirias
                                 Deborah F. Sirias
                                 Attorneys for Defendant MS BUBBLES,
                                 INC.

DATED: April 2, 2010        **KATTEN MUCHIN ROSENMAN LLP**


                            By:  s/ Cory A. Baskin
                                 Kristin Holland
                                 Cory A. Baskin
                                 Attorneys for Defendant AEROPOSTALE,
                                 INC.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW