O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| L.A. PRINTEX INDUSTRIES, INC., a California corporation, | ) ) ) | Case No. CV 08-07085 DDP (Ex) |
| | ) | **Order Granting Defendants' Motion for Summary Judgment (Dkt. No. 57) and Denying Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 48)** |
| Plaintiff, | ) ) ) ) | |
| v. | ) ) | |
| AEROPOSTALE, a Delaware corporation; CHARLOTTE RUSSE, a California corporation; KOHLS, a Wisconsin corporation; MS. BUBBLES, a California corporation; RAD CLOTHING, a California corporation, | ) ) ) ) ) ) ) ) ) | [Motions filed on March 5 and April 2, 2010] |
| Defendants. | ) ) ) | |

Before the Court is Plaintiff L.A. Printex ("LAP")'s Motion for Partial Summary Judgment (Dkt. No. 48) and Defendants Aeropostale and Ms. Bubbles (together "Defendants'") Motion for Summary Judgment (Dkt. No. 57).  For the reasons set forth below, the Court GRANTS Defendants' Motion for Summary Judgment, and DENIES Plaintiff's Motion for Partial Summary Judgment as moot.

///

## I. Background

LAP is a fabric printing company located in Vernon, CA. Aeropostale is a mall-based clothing retailer and Ms. Bubbles is an apparel vendor that sells wholesale goods to Aeropostale and other retailers.

LAP's complaint in this case alleges that Ms. Bubbles produced apparel made with fabric bearing one of LAP's copyrighted patterns, and sold that apparel to Aeropostale.  On December 19, 2005 LAP received a certificate of registration (VA 1-344-918) from the U.S. Copyright Office for a "textile design" entitled "Geometric (Group 4)."  LAP's registration application listed thirteen distinct patterns as components of Geometric (Group 4).  One of those patterns – labeled G70132 on LAP's application – is the pattern that Defendants are alleged to have copied and sold without LAP's permission.  The pattern at issue consists of a series of identically-sized snowflake images, in varying colors, arranged in a manner that produces a heart-shaped pattern.  Another pattern in the group, labeled G70133, displays the same snowflake image in a series of identical adjacent rows.

Sometime in 2005, Cindy Song, an LAP designer, used the graphic design program Adobe Photoshop 7.0 ("Photoshop") to create the G70132 and G70133 patterns.  It is undisputed that Song copied the snowflake image that serves as the patterns' basic building block from Photoshop's stock of "clip art."  LAP's registration application did not disclose that the patterns incorporated Photoshop clip art.

On April 6, 2010, after Defendants filed their Motion for Summary Judgment in this case, Plaintiff filed a supplementary registration form with the Copyright Office, explaining that

> The "snowflake" element used in G70132 was taken from Adobe's "Photoshop" clip-art (by general license). G70132 is a unique geometric heart-shaped design created by [LAP] which uses the Adobe "snowflake" element.
>
> [LAP]'s original application mistakenly omitted reference to the Adobe snowflake design that was used to create G70132. Because Plaintiff does not claim anything more than a license to use the snowflake design, it wished to correct its registration to identify the snowflake element as preexisting material and its G70132 design as a derivative work based on that material.

(Doniger Decl., Ex. 1.) The corrected registration also removed the pattern labeled G71033 from the group, explaining that "G70133 should be deleted because the 'snowflake' element is licensed and not owned by [LAP]." (Id.)

LAP sued Defendants (along with a number of other retailers that have since settled with LAP) in October 2008, upon discovering the allegedly infringing apparel for sale in various retail stores. Plaintiff filed a "motion for summary adjudication as to liability for copyright infringement" (referred to in this Order as Plaintiff's Motion for Partial Summary Judgment) on March 5, 2010. (Dkt. No. 48.) On April 2, 2010, Defendants filed a Motion for Summary Judgment as to all claims. (Dkt. No. 57.) The Court heard oral argument on both motions on May 3, 2010.

**II.  Legal Standard**

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

3

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. See id. If the moving party meets its initial burden, the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

**III. Discussion**

Defendants contend that LAP does not own a valid copyright in the snowflake pattern at issue in this case. LAP's claim of ownership fails, they contend, for at least three reasons: (1) the Adobe End User License Agreement ("EULA") governing LAP's use of Photoshop bars LAP from using Photoshop clip art to create new derivative works; (2) LAP's failure to disclose Adobe's ownership of the snowflake image in its initial registration application amounted to an attempt to defraud the U.S. Copyright Office; and (3) LAP registered the pattern at issue as part of a group of

patterns, but did not "publish" the patterns as a single unit as the Copyright Act requires.

A. General Copyright Principles

The Supreme Court has held that "[t]he *sine qua non* of copyright[ability] is originality" and that "[o]riginal, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." Feist Publ'n, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 345 (1991). "[A] work based upon one or more preexisting works" is, pursuant to the Copyright Act, copyrightable as a "derivative work," provided that it otherwise meets the Act's requirements. See 17 U.S.C. § 101.

In order to bring a claim for copyright infringement, a plaintiff must, with certain exceptions not relevant here, first demonstrate that it holds a valid and proper copyright registration. See 17 U.S.C. § 411(a). A certificate of registration from the U.S. Copyright Office raises the presumption of copyright validity and ownership. Micro Star v. Formgen Inc., 154 F.3d 1107, 1110 (9th Cir. 1998).

B. Adobe End User License Agreement

Defendants contend that the Adobe EULA governing LAP's use of Photoshop prohibits LAP from claiming ownership of derivative works based on Photoshop clip art. Upon careful review of the EULA, the Court is persuaded that the agreement does not bar LAP from claiming ownership of a derivative work based on the snowflake image.

The EULA grants LAP a "non-exclusive license to use the Software for the purposes described" in the license agreement. (Sirias Decl., Ex. 3, p. 1.) "Software" is defined as including "digital images, stock photographs, clip art, sounds or other artistic works ('Stock Files')." (Id.) The EULA further provides that LAP may "display, modify, reproduce, and distribute any of the Stock Files included with the Software." (Id. at p. 2.) In a separate section, the EULA states: "Except as expressly stated herein, this Agreement does not grant you any intellectual property rights in the Software and all rights not expressly granted are reserved by Adobe." (Id. at p. 3.)

LAP does not assert any intellectual property rights "in the Software." Instead, it claims ownership of a separate, original derivative work based on Photoshop clip art. The EULA provisions that Defendants rely on do not, by their plain language, forbid the creation of derivative works based on Photoshop clip art. Indeed, the term of the agreement permitting LAP to "modify" clip art images suggests that Adobe expects licensees to create new derivative works based on its clip art.

Defendants cite Schrock v. Learning Curve International, Inc., 586 F.3d 513, 524 (7th Cir. 2009) for the proposition that a licensee cannot copyright a derivative work based on licensed material where the applicable licensing agreement "affirmatively bars" the licensee from doing do. Schrock is inapposite. As explained above, the EULA does not affirmatively prohibit LAP from copyrighting derivative works based on Adobe's copyrighted clip

6

art.  Indeed, the license is silent on the issue.[1]  It clearly grants LAP the nonexclusive right to copy and modify clip art images.  The EULA further provides that LAP cannot assert any copyright in the clip art image as such, but it does not go so far as to preclude the creation of an original derivative work based on Adobe's copyrighted images.

Defendants also contend that LAP's failure to disclose, at least initially, that Geometric (Group 4) was in part based on Adobe's preexisting work, constituted fraud on the copyright office.  See <u>Urantia Found. v. Maaherra</u>, 114 F.3d 955, 963 (9th Cir. 1997) (noting that knowing errors on a registration application that might have caused the Copyright Office to reject the application may affect the validity of the registration).

Because the Court concludes that the EULA did not affirmatively bar LAP from registering derivative works created with Photoshop clip art, Defendants' fraud theory necessarily fails – LAP did not fail to disclose a fact that might have caused the Copyright Office to reject its application.

C.   Publication

LAP relies on its registration of Geometric (Group 4) – a group that contained, among other patterns, the G70132 pattern at issue in this case – to satisfy the registration element of its copyright infringement claim.  LAP's registration application stated that the patterns in Geometric (Group 4) were published together as a collection on December 7, 2005.

---

[1] In contrast, the EULA does state that LAP "may not claim any <u>trademark</u> rights in the Stock Files or derivative works thereof." (Sirias Decl., Ex. 3, p. 2 (emphasis added).)

7

The Copyright Act permits multiple items to be registered in a single application as either a group registration or as a single work registration. See 17 U.S.C. § 408(c)(1); Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 204 (3d Cir. 2005). Regulations promulgated under § 408(c)(1) of the Copyright Act provide for group registration of certain enumerated content categories – automated databases, related serials, daily newspapers, contributions to periodicals, daily newsletters, and published photographs. See 37 C.F.R. §§ 202.3(b)(4)-(9). Because the Register of Copyrights has not promulgated regulations allowing for group registration of fabric patterns, LAP's registration cannot be deemed valid under the Copyright Act's group registration provision.

LAP acknowledges the above, but contends that the Geometric (Group 4) registration amounted to a valid registration of a single work, comprised of thirteen distinct designs. Regulations promulgated by the Register of Copyrights define the term "single work," in the case of published works, as "all copyrightable elements that are otherwise recognizable as self-contained works, that are included in a <u>single unit of publication</u>, and in which the copyright claimant is the same." 37 C.F.R. § 202.3(b)(3)(i)(A) (emphasis added). "The single work registration regulation is silent on whether the individual, self-contained elements of the 'single work' be 'related' in order to be registered. Instead, single work registration requires . . . that all of the self-contained works be 'included in a single unit of publication' and share the same copyright claimant." Kay Berry, 421 F.3d at 205 (quoting 37 C.F.R. § 202.3(b)(3)(i)(A)).

8

"Publication," within the meaning of the Copyright Act, "is the distribution of copies . . . of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies . . . to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication." 17 U.S.C. § 101. "'Copies' are material objects . . . in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated . . . ." Id. "The distribution of catalogs and collections of photographs to multiple parties have been found . . . to constitute a single unit of publication." R.F.M.A.S., Inc. v. Mimi So, 619 F. Supp. 2d 39, 60 (S.D.N.Y. 2009).

Defendants contend that LAP did not publish the patterns contained within Geometric (Group 4) as a "single unit of publication," and thus, that it cannot establish that it holds a valid registration. LAP, for its part, contends that "[s]ince their creation, the designs registered on Copyright No. VA 1-344-918 have been shown together as a geometric collection to [LAP]'s customers. The concurrent offering for sale satisfies the requirement of multiple works published in a single unit of publication." (LAP Opp'n at 10-11.)

A threshold question is whether a presumption of validity attaches to LAP's claim of single unit publication. See 17 U.S.C. § 410(c) (providing that a plaintiff alleging copyright infringement who obtained a certificate of copyright registration within five years of the first publication of the work has the benefit of a presumption of the validity of the copyright). If

9

such a presumption does attach, then, at the summary judgment stage, Defendants bear the burden of producing some evidence that LAP did not publish the thirteen designs in Geometric (Group 4) as a single unit.  <u>Entm't Research Group, Inc. v. Genesis Creative Group, Inc.</u>, 122 F.3d 1211, 1217 (9th Cir. 1997) ("A certificate of copyright registration . . . shifts to the defendant the burden to prove the invalidity of the plaintiff's copyrights." (citations and quotation marks omitted)).  If LAP does not benefit from a presumption of validity as to the publication issue, then the fact of single unit publication is an element of its affirmative case, and accordingly, LAP bares the burden of producing competent evidence on that issue.  The evidentiary burden question is important, as the summary judgment record is sparse on the question of how LAP first "published" the patterns making up Geometric (Group 4).

At least one district court has held that the presumption of validity attaches to a registrant's claim that a collection of works was published as a single unit.  <u>R.F.M.A.S.</u>, 619 F. Supp. 2d at 59 (holding that a registration's presumption of validity "includes the preliminary determination by the Copyright Office that the [] collection was included in a single unit of publication").  Even assuming a presumption of single unit publication, however, the Court concludes that Defendants have produced some evidence to rebut that presumption, and LAP has produced no evidence to support its claim of single unit publication.  See <u>Entm't Research Group, Inc.</u>, 122 F.3d at 1217 ("An accused infringer can rebut th[e] presumption of validity, however.  To rebut the presumption, an infringement defendant must

simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case . . . .")

It is undisputed that LAP sold fabric bearing the G70132 design separately from the other designs in Geometric (Group 4). That the patterns were sold separately is some evidence that the patterns making up Geometric (Group 4) were not published, within the meaning of the Copyright Act, as a single unit.

LAP has produced no evidence to counter Defendants' contention that it published G70132 separately from the other twelve patterns listed on the registration application. The declaration of Jae Nah, LAP's president (and Plaintiff's designated person most knowledgeable about the publication of the G70132 pattern), states the following regarding the marketing and sale of the G70132 pattern:

> By February of 2006, L.A. Printex began offering G70132 extensively to its customers. While our company does not keep records of every customer it gives CAD and/or fabric swatches to (it is simply not practical to do so), we have very accurate records of all sales of sample yardage and production runs. Those records show that between February 2006 and November of 2006 plaintiff sampled and sold approximately 19,617 yards of fabric bearing G70132 to customers and potential customers including [a list of more than a dozen apparel companies].

(Nah Decl. ¶ 6) Nah does not allege or imply that G70132 was displayed, marketed, or sold concurrently with the other patterns in Geometric (Group 4) in December of 2005 (as LAP's registration application claimed). Indeed, his testimony suggests that LAP sold the G70132 pattern separately from the other patterns in Geometric (Group 4), and that LAP began offering the pattern to its customers approximately two months after the publication date reported on its registration application.

11

LAP contends in its moving papers that, as a general practice, it offers its designs for sale concurrently, in sample books that are made available to vendors. In the course of deposition testimony, defense counsel asked Nah why LAP registered the patterns in Geometric (Group 4) collectively. He explained that

> Our business practice usually we group it, and we register individual design with group with other design, which is created almost in the – almost same period, and we use to show to our client as a group. That's why we register all together.

(Nah Dep. 75:13-17.) Nah also stated that LAP's practice of grouping patterns together in one registration arose in response to advice the company received from the Copyright Office.

LAP's vague, unsupported assertion that it concurrently published the patterns that make up Geometric (Group 4) as a single unit in December 2005 is not sufficient to survive summary judgment. There is no evidence in the summary judgment record that the Geometric (Group 4) patterns were offered to LAP's customers for the first time, as a collection, in December of 2005. The testimony of LAP's president and person most knowledgeable suggests that they were not so offered. Because LAP has not produced competent evidence establishing that it holds a valid copyright registration for the G70132 pattern, it cannot, as a matter of law, prevail on its copyright infringement claim. Accordingly, the Court grants summary judgment in favor of Defendants.

///
///
///

12

**IV. Conclusion**

For the reasons set forth above, the Court GRANTS Defendants' Motion for Summary Judgment, and DENIES Plaintiff's Motion for Partial Summary Judgment as moot.

IT IS SO ORDERED.

Dated: May 5, 2010

DEAN D. PREGERSON
United States District Judge

13